### JESSE JORDAN v. J. M. PAYNE.

Delivered March 10, 1898.

**1. Public School Land—Actual Settlement.**

A finding that plaintiff was an actual bona fide settler within the statute authorizing the sale of the public school lands at the time he filed his application is not sustained where the only evidence to support the finding is to the effect that a few days before filing the application he entered upon the land and stuck into the ground a half dozen sticks as evidence, and that he did not remain upon the property as much as an entire day at any one time for a period of seven or eight months thereafter, but subsequently built a shanty on the ground. Rev. Stats., arts. 4287, 4291.

**2. Same—Actual Settler Defined.**

An "actual bona fide settler," within the meaning of the statutes authorizing the sale of the public domain to actual and bona fide settlers, is one who occupies the land as a residence, or with a view to a residence.

APPEAL from Jefferson. Tried below before Hon. STEPHEN P. WEST.

*Ford, Martin & Jones,* for appellant.

*D. F. Rowe* and *Wm. L. Thompson,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—The subject matter of this suit is section 86 of school lands surveyed for the Texas & New Orleans Railway Company, and is situated in Jefferson County. Both appellant and appellee claim the land under and by virtue of the provisions of the statute contained in chapter 3, title 89, of the Revised Statutes. The appellee made his application to purchase the land about the 25th of February, 1893, and it was awarded to him about the 9th day of March of that year, by the Commissioner of the General Land Office. The appellant, Jordan, entered upon the land about the 12th of December, 1895, and commenced the erection of a dwelling thereon for himself and family, and he moved his family into the house on the 26th of December, and he and they have ever since resided upon the premises. After he took possession he made application as required by the statute for the purchase of the land, but his application was rejected by the Commissioner on the ground that the land had been previously awarded to the appellee, Payne. After the rejection of appellant's application, the ap-

pellee instituted this suit to recover the possession of the land in controversy from the appellant; declaring himself to be a purchaser of the land from the State, as an actual settler thereon; that he actually resided on the land on February 25, 1896, and for three consecutive years prior to that date; and averring the erection by him of valuable improvements, and the payment of all moneys due the State for the land, under the statute regulating the sale of school lands to actual settlers. To this petition the appellant, Jordan, answered by general demurrer and general denial. Upon the trial of the cause, a verdict and judgment were rendered for the appellee, and the appellant's motion for a new trial being overruled, he appealed to this court. There is no question but that each party made application in due form to purchase the land upon the terms and conditions offered by the State, as declared by the statute; nor is there any question but that appellant took actual possession of the land in December, 1895, and made improvements thereon, and that he and his family have since then made their home thereon. It is also true that appellee has complied with the statute in making payments upon his alleged purchase, and that he filed, as required by article 4291 of the Revised Statutes, with the Commissioner of the General Land Office, in March, 1896, the statutory proof of his residence upon the land for three consecutive years. It being conceded that the land in question was, at the time appellee made his application to purchase it, vacant public school land, and subject to sale by the Commissioner to actual settlers, it is evident that the appellee should recover the land if he was an actual settler, in good faith, when he made his application to purchase the land, and so continued for three consecutive years from the date of his settlement. The burden was on the appellee to prove this. The appellant's contention is, that the evidence falls short of proving the appellee to have been such settler upon the land. The present statute, like many previous acts authorizing the sale of portions of the public domain, restricts such sales to actual and bona fide settlers. Rev. Stats., arts. 4287, 4291. And such a settler has been defined, in several decisions by our Supreme Court, to be one who occupies the land as a residence, or with a view to residence. Craven v. Brooke, 17 Texas; De Cordova v. Jennings, 20 Texas; Burleson v. Durham, 46 Texas; Turner v. Ferguson, 58 Texas; Busk v. Lowney, 86 Texas. In Burleson v. Durham, supra, it is said: "To constitute an occupancy of land an actual settlement thereon, the occupancy must be accompanied with circumstances which show the intention of the occupant is to remain on the land." In that case the evidence was, that Durham had a mill on an adjacent tract, and that one corner of the mill extended upon the land which he was claiming as an actual settler; that he had a lot thereon, a garden, a corn crib, and a stable; and that he cut timber from the land and used the same for mill purposes for over two years; and during that time his place of business was on the land. But the evidence failed to show that this occupancy was had with a veiw to residing on the land, and it was held that he was not an actual settler. The policy of the law in making these

sales has been frequently declared to be, to sell only to such occupants as settle upon the land with bona fide intention of residing thereon. In the case of Busk v. Lowney, 86 Texas, Lowney entered upon the land in November, 1889, and cleaned off about an acre, and trimmed up several shade trees; this he accomplished in less than half a day, and he then made application for the purchase of the land, accompanying the application with affidavit of his settlement in accordance with the terms of the statute; and in January following he returned to the land with his family, erected a dwelling, and from that time continued with them to reside upon the land. The land was vacant public domain and subject to sale to actual settlers when he entered upon it in November and made his application to purchase. In March following, Busk applied to purchase the land, and the surveyor of the county made a survey for both parties at the same time; one hundred and sixty acres for Lowney and the whole of the section for Busk, and Busk was held to be entitled to the land, because at the time Lowney made his application to purchase, he was not an actual settler; notwithstanding the fact that he was such when Busk applied to purchase the section. From the testimony of appellee, the following facts are disclosed: He came from Louisiana to Jefferson County in January, 1893; he brought with him no clothes save such as were on his person; he traveled about the county in the neighborhood of Beaumont for several weeks, and about the 20th of February, 1893, he entered upon the land in controversy; he picked up upon the land some ten or twelve sticks of sassafras, or sumac, about the size of his wrist, and five or six feet in length, which he stuck into the ground; this was done in evidence that the land was occupied; the work was done without the aid of an ax, or knife, or instrument of any kind. After this, on the same day, he went to the home of an acquaintance in the neighborhood of the premises, and spent the night, and the next day he returned to Beaumont, and shortly thereafter forwarded his application to the Commissioner of the Land Office to purchase the land, accompanying it with his affidavit of his settlement thereon. He does not remember returning again to the land until after he received notification from the Land Office that the land had been awarded him. Shortly after receiving this notice he went upon the place; and this time he took with him an ax and some nails, and erected, to quote his own words, "a more pretentious building." He put up some sassafras and sumac poles and made a little inclosure, perhaps eight or ten feet in area. He nailed some fifteen or twenty poles to a tree, and put some branches upon them; this he intended for a residence. After that, he was engaged a good deal of his time in planting rice; he planted several crops on the lands of other persons in the neighborhood; and he was engaged, he thinks, in rice planting until the latter part of May. After he was done planting, he thinks in August, Mr. Landrum moved him on section 62, which section he owned; he went on that section to cut timber with which to make improvements on section 86, there being no timber on section 86; he stayed on section 62 but a few days; the rain

compelled him to leave it; he went from there to Mr. Peterson's in August or September and stayed with him two weeks, then went to section 86; he thinks this was in August; could not say positively it was in August, but to the best of his recollection it was; he could not recollect what he did after he got back to section 86, nor could he tell how long he remained on section 86 after he left Peterson's. Some time in the fall, either in September or October, he could not say which, he built a shanty eight or ten feet square, of boards cut from section 62. After this he was engaged in harvesting the rice crops which he had planted. He left nothing valuable on section 86 during the summer of 1893. Not until the month of September did he carry his trunk or his mattress on section 86. How long he was harvesting his rice crops he could not remember, but he commenced to make preparations for a crop on section 86 after he had harvested his rice. When engaged in work on other places he usually lodged where he was working; sometimes he would go to section 86 on Saturday night, and return to his labors on Monday following. In February, 1894, he erected a fence, inclosing some thirty-five acres, he thinks; he planted rice and a garden, and resided after that on the place until the spring of 1896. This evidence as to his residence on the land after the winter of 1894, until the spring of 1896, if not contradicted, is certainly rendered very questionable by the testimony of the witnesses on behalf of the appellant. But giving full credence to the testimony of the appellee, we are of the opinion that he can not be held, in the light of the decisions we have cited, to have been an actual settler in good faith. His occupancy, if occupancy it can be called, from February, 1893, until September or October of that year, was certainly without "the accompaniment of circumstances showing an intention to remain on the land." There is no evidence that he remained on the place as much as an entire day at one time, from February 20, 1893, to September or October, when he completed his shanty; but on the contrary the evidence is strongly persuasive, if not conclusive, he never spent a night on the place within that period. Until the appellee built his shanty, there was on the place nothing whatever to indicate the abode of civilized man, neither furniture, clothing, nor cooking utensils. Not being an actual settler at the time he filed his application, appellee acquired no right in or to the land in controversy.

We are of the opinion that the court erred in not granting a new trial, for the reason that the verdict is not supported by the evidence, and that it is contrary to the evidence; and for such error the judgment is reversed and the cause remanded. We are further of the opinion that appellant's other assignments of error are not well taken, and that there is no error in the rulings of the court in the admisssion of evidence, or in its charge.

*Reversed and remanded.*